UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

THOMAS J. McPHETRIDGE, SR.,

    Plaintiff,

    v.                                         Case No. 06-C-0784

MILWAUKEE COUNTY CHILD
SUPPORT ENFORCEMENT,

    Defendant.

_____

ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION

_____

        The plaintiff, Thomas J. McPhetridge, Sr. (McPhetridge), representing himself, brings this lawsuit against Milwaukee County Child Support Enforcement (MCCSE), alleging civil rights violations pursuant to 42 U.S.C. § 1983. McPhetridge claims that the MCCSE acted to violate his due process rights when it went forward with a state court motion hearing on July 12, 2002, without his participation, resulting in a change to his child support order. Continuing, McPhetridge maintains that MCCSE denied him equal protection by acting on behalf of his former wife, Christine McPhetridge, in state court proceedings. Additionally, McPhetridge alleges that the MCCSE engaged in impermissible *ex parte* communications with state court officials during legal proceedings. Lastly, McPhetridge contends that the MCCSE is responsible for improperly delaying his state appellate proceedings.

        The MCCSE, a Milwaukee County department, now moves for summary judgment. Initially, the MCCSE asserts that this court lacks subject matter jurisdiction over the present case based on the *Rooker-Feldman* doctrine, which prevents lower federal courts from exercising jurisdiction over claims that have been litigated in state court. For the reasons

stated below, this court agrees that it lacks subject matter jurisdiction over the claims in this case and that the defendant's motion to dismiss should be granted.

## I. BACKGROUND

Thomas McPhetridge and his wife Christine McPhetridge were divorced on December 18, 1997. (McPhetridge Dep. 45:2, Feb. 21, 2007.) The couple had two children together during their marriage, Thomas and Joseph. (McPhetridge Dep. 12:4.) As part of the divorce proceeding, McPhetridge was ordered by the court to make child support payments to his former wife for the period from April 1998 until June 1999. (McPhetridge Dep. 50:4.) In July 1999, sole custody of the children was awarded to McPhetridge and for a short time Christine McPhetridge was ordered to make child support payments. (McPhetridge Dep. 49:15.) However, in December 1999, McPhetridge was charged with the crime of sexual assault, of which he was later convicted and incarcerated. (Ray Aff. Ex.1; McPhetridge Dep. 38:3-39:20.) A motion hearing on December 6, 1999, in Milwaukee County Circuit Court resulted in Christine McPhetridge being awarded temporary sole custody of the two children and McPhetridge being ordered to pay child support based on 25% of his gross income. (*See* Ray Aff. Ex. 1.)

Prior to September 1, 2001, Wisconsin law allowed courts to express child support orders as a percentage of an individual's income or as a fixed dollar amount. (Nelson Aff. 5.) In August 2000, the federal government advised Wisconsin that it would be ineligible for a portion of federal incentive funds due to its use of percentage-expressed orders. (Nelson Aff. 6.) Acting on the federal government's advice, the Wisconsin legislature restricted circumstances under which percentage-expressed orders would be permitted and changed state law to allow for the modification of percentage-expressed orders to fixed-amount orders without a finding of any "substantial change in circumstances." (Nelson Aff. 7-8.) *See* Wis.

Stat. §§ 767.511(1)(a) & 767.34(2)(am). Child enforcement agencies around the state began filing modification orders to convert existing percentage-expressed orders, with the MCCSE alone filing motions in approximately 14,000 cases between January 1, 2001, and September 30, 2002. (Nelson Aff. 9-10.)

On June 17, 2002, the MCCSE sent McPhetridge a "Notice of Motion and Motion for Conversion of a Percentage Order" indicating that a hearing would occur on July 12, 2002, regarding his child support order. (Ray Aff. j; Ray Aff. Ex. 6.) McPhetridge, who at that time was residing at the Jackson Correctional Institution, received the notice prior to July 12, 2002, and inquired with prison officials about participating in the hearing. (McPhetridge Dep. 93:3-94:6.) The prison registrar notified McPhetridge that his name was not on the court contact schedule and he was unable to appear or participate at the July 12 hearing. (McPhetridge Dep. 99:1-101:24 & 101:22-102:5.) Christine McPhetridge was also not present at the July 12 hearing, which proceeded with only an MCCSE attorney present and resulted in the conversion of McPhetridge's child support order to a fixed payment of $223 per month. (Ray Aff. Ex. 9.) After receiving the July 12, 2002, Order, McPhetridge filed at least one motion with the circuit court requesting *de novo* review. (Ray Aff. Ex. 10-11.)

On January 20, 2004, a *de novo* review of McPhetridge's family law case was held in Milwaukee County Circuit Court. (Ray Aff. Ex. 23.) The circuit judge notified McPhetridge that he was part of a state-wide project to convert all percentage-expressed child support orders. (Ray Aff. Ex. 23.) The court ruled that McPhetridge's property should be identified on a lien docket because his current support payments were over $2,000 in arrears. (Ray Aff. Ex. 23.) McPhetridge initiated an appeal and filed his initial appellate brief on November 24, 2004. (Ray Aff. Ex. 32.) Subsequently, the State of Wisconsin, acting through the MCCSE, filed a motion to be added to the appeal. (Ray Aff. Ex. 33.) On January 16,

3

2005, McPhetridge filed an objection to the state's motion; however, on February 2, 2005, the Wisconsin Court of Appeals issued an order allowing the state to participate. (Ray. Aff. Ex. 34-35.) Although the state filed its appellate brief on March 4, 2005, McPhetridge claims that he received it on March 14. (Ray Aff. bb.) Nevertheless, McPhetridge filed an appellate brief, which included a response to the state's brief. (Ray Aff. Ex. 43.) However, McPhetridge did not request additional time to file a response. (Ray Aff. cc.)

On November 1, 2005, the Wisconsin Court of Appeals affirmed the rulings of the Milwaukee County Circuit Court. (Ray Aff. Ex. 44.) McPhetridge immediately petitioned the Wisconsin Supreme Court to review his appeal, but the petition was denied on January 20, 2006. (Ray Aff. Ex. 48.)

## II. DISCUSSION

### A. The *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, federal district courts may not entertain suits brought by state-court losers seeking review and rejection of their state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under this doctrine, lower federal courts lack subject matter jurisdiction to review state court decisions, as only the Supreme Court has appellate jurisdiction to reverse or modify a state court judgment. *Holt v. Lake County Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005). District courts lack jurisdiction over "challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Leaf v. Supreme Court of Wis.*, 979 F.2d 589, 596 (7th Cir. 1992). The doctrine precludes lower courts from exercising jurisdiction "only when, after state proceedings have ended, a losing

party in state court files suit in federal court complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Holt*, 408 F.3d at 336.

The scope of the *Rooker-Feldman* doctrine also bars claims that are "inextricably intertwined" with the state court judgments even if the claims were not argued before the state courts. *Ritter v. Ross*, 992 F.3d 750, 753 (7th Cir. 1993). Although there is no clear line of demarcation between claims that are inextricably intertwined and those that are not, the emphasis is on whether "the district court is in essence being called upon to review the state-court decision." *Id.* at 754. The district court must examine claims to ensure that a plaintiff is not attempting to circumvent the affect of the doctrine by "casting the complaint in the form of a civil rights action." *Id.* at 755; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557 (7th Cir. 1999). When presented with a case posing a potential *Rooker-Feldman* issue, the district court must determine whether the injury alleged is the result of the state court judgment. *Kamilewicz v. Bank of Boston*, 92 F.3d 506, 510 (7th Cir. 1996).

### B. McPhetridge's Claims

In determining whether the *Rooker-Feldman* doctrine bars resolution of McPhetridge's claims, this court must decide whether the claims were decided previously by, or are inextricably intertwined with, state court proceedings such that the claims assert an injury caused by the state-court judgment and seek review and rejection of that judgment. *Holt*, 408 F.3d at 336; *Ritter*, 992 F.3d at 753.

McPhetridge appears to present four claims based on events during the pendency of his state court proceedings.[1] First, he contends that his due process rights were

---

[1] While McPhetridge spends several pages in his opposition brief taking issue with this court's previous ruling on a discovery motion which was addressed during an April 19, 2007, hearing, there is no good reason for this court to entertain such arguments at this time.
    Further, McPhetridge's opposition brief appears to raise for the first time that he was prevented from presenting his claims in state court due to an extrinsic fraud perpetrated on the state court by the MCCSE. However, his complaint does not allege extrinsic fraud. Although a district court has the responsibility to give fair consideration to all claims

5

violated when the MCCSE allowed a state court motion hearing concerning his child support order to take place on July 12, 2002, in his absence. (Compl. 1; McPhetridge Dep. 66:22-67:12 & 68:8-19.) Second, McPhetridge submits that his equal protection rights were violated by the MCCSE when it acted on behalf of his former wife, Christine McPhetridge, in state court. (Compl. 4; McPhetridge Dep. 66:22-69:20 & 71:13-23.) Third, according to McPhetridge, the MCCSE allegedly took part in *ex parte* communications with state court officials during the July 12, 2002, hearing, at which the MCCSE was the only party present. (Compl. 2; McPhetridge Dep. 66:13-67:8 & 72:3-15.) Finally, McPhetridge claims that the MCCSE impermissibly delayed his state appellate proceedings by filing a motion to be added onto the appeal after he submitted his appellate brief. (Compl. 2; McPhetridge Dep. 67:16-23 & 77:11-78:19.)

(1)

In considering McPhetridge's claims that his due process rights were violated when a July 12, 2002, motion hearing proceeded in his absence, it is important to establish that it is the presiding judicial official's role and obligation to manage legal proceedings and to decide whether to go forward with a hearing in the absence of one or more of the parties. *See Geders v. United States*, 425 U.S. 80, 87 (1976) (noting that the trial judge has substantial control over proceedings). In this case, the decision to go forward with the July 12, 2002, hearing was within the control of the Court Commissioner and not the MCCSE. As a result, although McPhetridge's claim is against the MCSSE, the claim really takes issue with the Family Court Commissioner's decision to proceed with the July 12, 2002, conversion

---

in a pro se litigant's pleadings, this duty does not require the district court to decide unraised issues that were subsidiary to the claims actually plead. *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982). Additionally, Federal Rule 9(b) requires all averments of fraud to be specifically pleaded to include particular statements of the circumstances constituting the fraud. Hence, McPhetridge's failure to comply with Rule 9(b) prevents this court from construing his complaint as though it contains a properly pleaded extrinsic fraud allegation.

hearing in McPhetridge's absence. That hearing resulted in the conversion of McPhetridge's child support order from a percentage-expressed order to a fixed amount order—an unfavorable result from McPhetridge's point of view.

McPhetridge's Due Process claim is barred by the *Rooker-Feldman* doctrine because he raised it to no avail in his appellate brief to the Wisconsin Court of Appeals. In that brief, under a section titled "Abuses of Discretion," McPhetridge asserted that "[c]onducting the [July 12, 2002] hearing with no appearances or opportunity to explain circumstances was an ABUSE OF DISCRETION." (McPhetridge App. Br. ¶ 25.) Although the appellate court did not address this claim in its opinion, it was presented with the claim, it upheld the lower courts' decisions, and chose not to grant McPhetridge any relief based on his challenges to those proceedings. McPhetridge's renewed attempt to raise this claim in federal court is merely an effort to impermissibly obtain review and rejection of the state court judgment by recasting his charges as a civil rights action. *See Ritter*, 992 F.3d at 755. Ultimately, McPhetridge lost in state court and now seeks appellate review of that judgment in federal district court. The *Rooker-Feldman* doctrine bars this type of relief.

(2)

McPhetridge also alleges that MCCSE attorneys acted on his former wife's behalf during the trial level proceedings of his case. In his complaint, McPhetridge contends that MCCSE "exceeded their authority" by "acting as ex-wive's [sic] counsel in her absence." (Compl. 4.) Further, in his deposition, McPhetridge stated that he thought that the court commissioner and circuit court judge abused their discretion by not stepping in and preventing MCCSE from acting on his former wife's behalf. (McPhetridge Dep. 81:12-82:8.) McPhetridge stated that he made several motions for default judgment on the matter and

7

admitted that he was now asking the federal court to find that the state court officials abused their discretion. *Id.*

Again, McPhetridge is attempting to cast the assertions he raised to the state courts against the MCCSE in hopes of avoiding the *Rooker-Feldman* doctrine and having the unfavorable state court rulings changed. However, the state court rulings that McPhetridge seeks relief from are "inextricably intertwined" with his claim that the MCCSE attorneys were working on his former wife's behalf. The attorneys for the MCCSE participate in child enforcement hearings as state agents, remaining unobligated to any other party to the proceedings.[2] (Nelson Aff. 3.) If MCCSE attorneys exceeded their capacities as state representatives so as to impermissibly represent McPhetridge's former wife, it occurred openly and in the presence of the state court judicial officials presiding at the hearings.

In his deposition, McPhetridge admits that he challenged the state court's decision to allow the MCCSE attorney to act on his former wife's behalf by making "several motions for default judgment." (McPhetridge Dep. 81:24-25.) The state court had the opportunity to address any improper representation which was occurring, but declined to do so. This claim is also "inextricably intertwined" with the state court proceedings because it essentially calls upon this federal court to review the state court's decision on the matter. *See Ritter*, 992 F.3d at 754. Therefore, this claim is also barred by *Rooker-Feldman*.

(3)

McPhetridge's allegation that the MCCSE took part in *ex parte* communications with court officials during the July 12, 2002, hearing was raised by McPhetridge in his appellate brief and in his reply brief to the Wisconsin Court of Appeals. In his appellate brief,

---

[2] Wis. Stat. § 767.205(2)(b)1 states: "Except as provided in subd. 2., in any action affecting the family under a child support enforcement program, an attorney acting under s. 49.22 or 59.53(5) . . . represents only the state."

8

McPhetridge wrote that "[t]he 'ex parte' communications only prejudiced Thomas further in the eyes of the courts," in reference to the January 20, 2004, *de novo* review at which only an MCCSE attorney was actually present, though McPhetridge and his former wife appeared by telephone. (Ray Aff. Ex. 32.) Further, in his reply brief, McPhetridge stated that "[p]etitioner therefore asserts claim [sic] that the courts engaged in ex parte communications as defined in *Mogged v. Mogged*, [cite omitted]." (Ray Aff. Ex. 34.)

Although McPhetridge maintains that the MCCSE is responsible for violating his due process rights by engaging in *ex parte* communications with the state circuit court, this appears to be only a means of circumventing the affect of the *Rooker-Feldman* doctrine by creating the impression that McPhetridge is taking issue with the MCCSE and not the state court judgment. However, the injury that McPhetridge is alleging is still the result of the state court judgment and the relief he is seeking is the modification or nullification of that judgment.

(4)

Finally, McPhetridge's claim that the MCCSE impermissibly delayed his state appellate proceedings is also "inextricably intertwined" with the Wisconsin Court of Appeals decision to permit the State of Wisconsin to join the appeal despite his objections.[3] The State of Wisconsin, acting through MCCSE attorneys, asked the appellate court for permission to participate in the proceedings. (Ray Aff. Ex. 33.) In response to the State's motion, McPhetridge filed his own response requesting that the court deny the motion because of the prejudice that would ensue. (Ray Aff. Ex. 34.) The Wisconsin Court of Appeals issued a short order and concluded that McPhetridge's objections were "without merit" and that he

---

[3] McPhetridge does not indicate any particular legal basis for alleging impermissible delay. In his deposition, though, he claims that MCCSE committed "numerous procedural defects, causing delays." (McPhetridge Dep. 67:22-23.) Apparently, McPhetridge is claiming that MCCSE violated his procedural due process rights when it moved to be added to the appeal after McPhetridge had already filed his appellate brief.

9

"provide[d] few facts to support the arguments he [was] making." (Ray Aff. Ex. 35.) Therefore, the appellate court granted the State's motion to participate in the matter. *Id.*

If any impermissible delay existed it necessarily resulted from Wisconsin Court of Appeals' decision to allow the State to participate and not from any action on the part of the MCCSE. Although McPhetridge directs this claim against the MCCSE, it is clear that he is taking issue with the appellate court's decision to allow the State of Wisconsin to join the appeal. The *Rooker-Feldman* doctrine controls when a party seeks recovery for injuries resulting from a state court judgment. *Kamilewicz*, 92 F.3d at 510. In this case, the impermissible delay that McPhetridge alleges, if it exists, is the result of the state court's decision to allow the State of Wisconsin to join the appeal and, therefore, the *Rooker-Feldman* doctrine bars the instant claim.

Consequently,

IT IS ORDERED that this case is dismissed for lack of subject matter jurisdiction.

Dated at Milwaukee, Wisconsin, this 27th day of February, 2008.

BY THE COURT

s/ C. N. CLEVERT,, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE